UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONNIE HATTON                                                                        PLAINTFF

v.                                  Case No. 2:18-cv-2120

INGERSOLL RAND COMPANY LIMITED
BENEFITS ADMINISTRATION COMMITTEE                    DEFENDANT

**OPINION AND ORDER**

Before the Court is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), initiated by Plaintiff Ronnie Hatton's complaint (Doc. 1). Defendant Ingersoll Rand Company Limited Benefits Administration Committee ("Ingersoll") filed an answer (Doc. 6), and the parties submitted a stipulated administrative record (Doc. 9). Hatton then filed a motion for summary judgment (Doc. 12), statement of facts (Doc. 14), and a brief in support (Doc. 13). Defendant filed a response in opposition (Doc. 16), and a response to Hatton's statement of facts (Doc. 15). For the following reasons, Hatton's motion for summary judgment will be DENIED and summary judgment will be entered in favor of Defendant Ingersoll.[1]

**I.     Background**

Mr. Hatton's employment with Trane U.S. Inc. ("Trane") began in February of 1990 at its Fort Smith facility. (Doc. 9, p. 926). Hatton worked as a machine operator for Trane until May 15, 2014. *Id.* In this role, Hatton was making $28,800.49 as a base salary and his annual compensation was $40,553.24 when benefits and overtime were included. (Doc. 14, p. 1). On

---

[1] A court may "enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Madewell v. Downs*, 68 F.3d 1030, 1049 (8th Cir. 1995). Summary judgment in favor of Ingersoll is proper because the procedural posture of an ERISA action requires the parties to put forth all evidence in the stipulated record for the Court's review.

1

December 9, 2014, Hatton applied for disability benefits under the Trane Merged Hourly Pension Plan. (Doc. 9, p. 1309). Hatton's physician, Dr. Donna Shipley, noted that his diagnosis was "knee pain from [osteoarthritis]" and back pain from degenerative disc disease of the spine. (Doc. 9, p. 1311). Shipley identified Hatton as having a "severe limitation of functional capacity: incapable of minimal (sedentary) activity." *Id.* In response to this claim, the Ingersoll-Rand Company Benefits Administration Committee ("BAC") reviewed Hatton's claim.[2] (Doc. 9, p. 1307). The BAC initiated a medical records review by Dr. William C. Andrews. (Doc. 9, p. 1329). Dr. Andrews determined based on a conversation with Dr. Shipley and a review of Hatton's medical records that Hatton "would be capable of working eight hours per day, 40 hours per week" in a sedentary capacity. (Doc. 9, p. 1330). At the time, the BAC defined disability under the pension plan as "disabled from performing further work for any occupation for remuneration or profit prior to his Severance Date, and in the Company's opinion is likely to remain so disabled continuously and permanently." (Doc. 9, p. 1331). Based on Dr. Andrews's report, the committee denied Hatton's claim for disability benefits. (Doc. 9, p. 1307). On June 29, 2015, Hatton appealed the BAC's decision. (Doc. 9, p. 1334). The BAC had Hatton undergo an Independent Medical Examination ("IME") by Kevin Trangle, a board-certified internist. (Doc. 9, p. 889). Dr. Trangle completed a thorough review of Hatton's medical history and concluded that he likely had "physical and functional limitations," but "is not precluded . . . from working in a sedentary occupation." (Doc. 9, p. 905). Thus, Dr. Trangle concluded that Hatton's medical history did not establish that the claimant was totally disabled from performing further work by the definition of "any occupation for remuneration or profit." (Doc. 9, p. 906). On August

---

[2] In 2008, Ingersoll Rand Company Limited acquired all common stock of Trane, Inc. and Ingersoll Rand's Benefits Administration Committee became the plan administrator. (Doc. 9, p. 1377).

25, 2015, the BAC denied Hatton's appeal and concluded that documentation from Hatton's medical providers as well as the reports from independent medical specialists demonstrated a lack of evidence that his medical conditions precluded him from working in any occupation. (Doc. 9, p. 892). On November 9, 2015, Hatton's attorney reached out to Ingersoll seeking Hatton's records from the administrative appeal. (Doc. 9, p. 886). In response, Ingersoll sent Hatton's attorney the records and shared with him that Ingersoll was reopening Hatton's claim for disability benefits in light of this Court's order in *Betnar v. Ingersoll Rand Company Limited*, Case 2:14-cv-02032, that directed Ingersoll to conduct a vocational review in its determination of disability pension claims.[3]

On January 21, 2016, BAC scheduled a functional capacity evaluation for Hatton with Mike Williams, a physical therapist at WorkStrategies. Williams concluded that Hatton demonstrated the ability to function in "Light Physical Demand Category for an 8 hour day . . . based on his material handling capabilities." (Doc. 9, p. 838). Williams noted that the results of his evaluation "cannot be considered an accurate representation of Mr. Hatton's maximal functional capacity" due to inconsistency during testing. *Id.* Williams notes in his report that he

---

[3] This Court in *Betnar v. Ingersoll Rand Company Limited* noted that to properly evaluate whether an employee under the Trane Merged Hourly Pension Plan was "disabled," the BAC should review:

> not only a medical assessment of [the claimant]'s physical capacity to perform both physical and sedentary work, but also a non-medical assessment as to whether [the employee] has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—that permits [the employee] to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood. Where, as here, the plan is silent on the issue of non-medical vocational characteristics, the nature of this consideration will be within the plan administrators' broad discretion, and may vary from case to case. We do not hold that either plan administrators or claimants must use any particular method to determine a claimant's vocational capacities. However, we must be satisfied that the plan's consideration of the claimant's circumstances is neither arbitrary nor capricious.

(quoting *Demirovic v. Building Serv. 32 B-J Pension Fund*, 467 F.3d 208, 215 (2d Cir. 2006)).

believed Hatton did not put forth maximum effort while completing the tests. *Id.* The committee also had a vocational employability assessment completed for Hatton. (Doc. 9, p. 830). The assessment determined that based on Hatton's functional capacity allowing for sedentary to light physical work, there were 49 occupational titles that matched his skills. (Doc. 9, p. 832). Of those titles, 2 were considered good matches, 14 were considered fair matches and 33 were considered potential matches. *Id.* Wage data for those occupations averaged $28,360 annually. (Doc. 9, p. 833).

After receiving the functional capacity analysis and the vocational employability assessment, the BAC determined that Hatton's claim should be denied again. (Doc. 9, p. 816). In its letter of denial, the BAC notes that because the base salaries of the occupations identified as matches for Hatton's functional capacity were equal to or greater than his base salary when he left Trane, he was not disabled under the Plan because "there were jobs that permit [Hatton] to earn a reasonably substantial income from [his] employment, rising to the dignity of an income or livelihood." (Doc. 9, p. 817). Hatton appealed the decision of the BAC. In his appeal, Hatton argued that the BAC's denial of his claim was based on "cherry picked information" and supplemented Hatton's claim file with a functional capacity assessment completed by Velvet Medlock, a physical therapist. Medlock determined from her tests that Hatton's functional capacity was "below sedentary secondary to his inability to tolerate any prolonged posture of more than 20 minutes." (Doc. 9, p. 48). After receiving Hatton's second appeal, Ingersoll had Hatton's entire claim file reviewed again by Dr. Josette Boukhalil-Laklak, another independent physician procured through Trangle & Associates.[4] Dr. Laklak determined that although Hatton has "a

---

[4] Dr. Kevin Trangle runs a firm that contracts with board certified physicians to complete independent medical examinations. *See* Kevin Trangle & Associates, http://independent medicalexperts.com (last visited May 30, 2019).

complex medical history with multiple chronic medical conditions . . . Hatton is able to stand and walk for 3 hours, lift up to 10 pounds, and push and pull up to 20 pounds. There are no limitations regarding sitting. However, none of these conditions are severe enough to preclude him from performing any occupation." (Doc. 9, p. 21).

On August 8, 2017, the BAC denied Hatton's appeal. In its decision letter, the BAC noted that it credited the functional capacity evaluation of Williams over the evaluation by Medlock because Williams's evaluation was more thorough due to the "detailed and well supported testing" conducted by Williams. (Doc. 9, p. 22). The BAC noted that Hatton's decline noted in Medlock's evaluation may also have been the result of Hatton's cardiac condition, which presented after Hatton filed his disability claim in 2014. *Id.* The BAC also found that Williams's testing appeared in line with the findings of two reviewing physicians. *Id.* The BAC also considered the vocational employability assessment and explained that Hatton was not disabled under the plan because the base salaries of the occupations found to be suitable for Hatton's skills and functional capacity were equal to or greater than Hatton's base wages when he left Trane. *Id.* On July 16, 2018, Hatton filed this action asking the Court to overturn the BAC's decision. (Doc. 1).

**II.     Legal Standard**

Once a plaintiff in an ERISA action has exhausted his administrative remedies under a benefits plan, a reviewing court's function is to examine the record that was before the administrator of the plan at the time the claim was denied. *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan gives the administrator discretionary authority to determine a participant's eligibility for benefits, the Court reviews the decision for abuse of discretion, and will defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and

capricious. *Firestone*, 489 U.S. at 115; *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004); *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000) ("[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference . . . ."). The Court considers five factors to determine whether the decision was supported by a reasonable explanation or was instead an abuse of discretion:

(1) whether the administrator's interpretation is consistent with the goals of the Plan;
(2) whether the interpretation renders any language in the plan meaningless or internally inconsistent;
(3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
(4) whether the administrator interpreted the relevant terms consistently; and
(5) whether the interpretation is contrary to the clear language of the Plan.

*Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002). The review, "though deferential, is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005). In determining whether a plan administrator abused its discretion, the Court does not "substitute its own judgment for that of the plan administrator." *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006). Rather, "[i]f the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997) (citing *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)).

**III. Analysis**

The ultimate question is whether the BAC abused its discretion in finding that Hatton was not disabled under the Plan. The Plan defines disability as follows:

> A member will be considered disabled for purpose of this Appendix if he becomes totally disabled from performing further work for any occupation for remuneration or profit prior to his Severance Date, and in the Company's opinion is likely to remain so disabled continuously and permanently.

(Doc. 9, p. 4). Hatton does not argue that the administrator's interpretation is inconsistent with the goals of the Plan or that the interpretation is contrary to the clear language of the Plan. The bulk of Hatton's argument in his motion for summary judgment focuses on the BAC's interpretation of the Plan's definition of disability and whether the plan gave a full and fair review of Hatton's claims. The Court will address each of these issues in turn.

Hatton first argues that even after the BAC reopened Hatton's claim, it still considered whether Hatton could perform "any occupation" for remuneration or profit in direct conflict with the Court's order in *Betnar*. As evidence of this argument, Hatton points to the medical reviews of Dr. Trangle and Dr. Laklak that conclude that Hatton was not disabled because the medical evidence failed to demonstrate that Hatton could not perform "any occupation." However, Hatton's argument incorrectly places emphasis on the doctors' conclusions about Hatton's disability, when it should focus on the BAC's conclusions regarding Hatton's disability. Reviewing the BAC's denial of Hatton's claim and its denial of his appeal, it is clear that the BAC heeded the guidance of this Court and considered not only Hatton's functional capacity, but also whether there were occupations within the national economy that Hatton could complete that would provide him with the dignity of a living wage. Thus, the BAC interpreted the Plan's disability definition to require that Hatton could not perform further work in an occupation that would pay him a living wage. This interpretation appears to be reasonable and Plaintiff has failed to demonstrate that this choice was an abuse of discretion on the part of the BAC.

Hatton also takes issue with the BAC's choice not to more fully investigate the functional

capacity evaluation of Hatton completed by Velvet Medlock that found that Hatton could not even complete sedentary work. However, the BAC provided a detailed explanation of why it accorded more weight to the functional capacity evaluation submitted by Mike Williams over the functional capacity evaluation submitted by Medlock. The BAC noted that Williams's evaluation was more thorough, and that Medlock's evaluation may have been affected by Hatton's heart conditions that presented themselves after Hatton filed for disability. The BAC reviewed thorough medical records reviews from multiple board-certified physicians and had a vocational employability assessment completed based on the functional capacity reported by the physicians. The BAC determined from this assessment that there were 49 different occupations in the national economy that paid equal to or greater than Hatton's base salary at the time he left Trane. As a result, the BAC found that Hatton was not disabled under the Plan. This process directly comports with this Court's guidance in *Betnar* and is not an abuse of discretion.

IT IS THEREFORE ORDERED that Plaintiff Ronnie Hatton's motion (Doc. 12) for summary judgment is DENIED and summary judgment will be entered in favor of Ingersoll Rand Company Limited Benefits Administration Committee. Judgment will be entered separately.

IT IS SO ORDERED this 31st day of May, 2019.

/s/P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE